IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

ANTUAN KEYELLE SPIKES,           )
                                 )
            Plaintiff,           )
                                 )
      v.                         )          CV 320-036
                                 )
KILOLO KIJAKAZI, Acting Commissioner  )
of Social Security Administration,[1]  )
                                 )
            Defendant.            )
_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff appeals the decision of the Commissioner of Social Security denying his

application for Supplemental Security Income ("SSI") under the Social Security Act.  Upon

consideration of the briefs submitted by both parties, the record evidence, and the relevant

statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final

decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in

favor of the Commissioner.

I.      **BACKGROUND**

Plaintiff applied for SSI on May 5, 2017, alleging a disability onset date of February 19,

2015.  Tr. ("R."), p. 158.  Plaintiff was twenty-three years old on his alleged disability onset date

and twenty-seven years old at the time the Administrative Law Judge ("ALJ") issued the

decision under consideration.  R. 23.  Plaintiff alleged disability based on learning problems and

---

[1]Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Kilolo Kijakazi, Acting Commissioner of Social Security Administration, as the proper Defendant.

inability to read.  R. 176.  Plaintiff completed the twelfth grade but attended special education classes and reads and writes on a first-grade level.  R. 41, 177.  Plaintiff accrued no relevant work history prior to his disability.  R. 23.

The Social Security Administration denied Plaintiff's application initially, and Plaintiff filed a request for reconsideration which was denied.  R. 65-75, 76-80.  Plaintiff requested a hearing before an ALJ, R. 103, and the ALJ held a hearing on March 14, 2019.  R. 30-51.  On July 17, 2019, the ALJ issued an unfavorable decision.  R. 12-24.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since May 5, 2017, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments:  borderline intellectual functioning; personality disorder; history of ADHD; and history of alcohol and cannabis abuse, in early remission (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can occasionally climb ladders, ropes, and scaffolds and occasionally be involved with work around hazards such as unprotected heights and moving mechanical parts. Any work should involve only simple, routine, repetitive tasks and instructions. There should be no more than frequent changes in the work environment or routine. There should be no assembly line, fast-paced, high production quota work. He can sustain no more than two hours of uninterrupted concentration, persistence, and pace without a break. Reading and writing must not be an essential job element, and all instructions must be verbal. The claimant has no past relevant work. (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969a). The claimant has not been under a disability, as defined in the

Social Security Act, since May 5, 2017, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 17-24.

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review.  42 U.S.C. § 405(g).  Plaintiff filed this civil action requesting reversal or remand of that adverse decision.

## II.    STANDARD OF REVIEW

Judicial review of Social Security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the

Commissioner even if the evidence preponderates in favor of the claimant.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   DISCUSSION

Plaintiff argues the ALJ miscategorized Plaintiff's educational background, failed to specify the weight given to opinions of psychologists, and failed to direct a finding of disability based on administrative *res judicata*.  See doc. nos. 13 ("Pl.'s Br."), 15 ("Pl.'s Reply").  The Commissioner maintains the decision to deny benefits is supported by substantial evidence and should be affirmed.  See Comm'r's Br., doc. no. 14.  None of Plaintiff's arguments form a valid basis for reversal or remand.

### A.    Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's residual functional capacity ("RFC") and ability to return to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  RFC is defined in the regulations "as that which an individual is still able to do despite the

limitations caused by his or her impairments." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted).  Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." <u>Watkins v. Comm'r of Soc. Sec.</u>, 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*).  Limitations are divided into three categories:  (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling;  (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. <u>Baker v. Comm'r of Soc. Sec.</u>, 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).  When determining whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant medical and other evidence." <u>Phillips</u>, 357 F.3d at 1238.

**B.    The ALJ's Categorization of Plaintiff's Education as High School Was Harmless**

Plaintiff argues the ALJ erred by categorizing his education level as high school, despite his graduation from high school, because Plaintiff was in the special education program and currently scores at the first-grade level in math and reading.  The regulations provide the following guidance concerning categorization of an applicant's educational background:

> (b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a

work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. In evaluating your educational level, we use the following categories:

(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

(4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. § 416.964

Plaintiff never specifies which category is correct but reading at a first-grade level is not illiteracy, and the Court presumes Plaintiff contends he qualifies for the marginal education category, which by definition means he has the ability to perform simple, unskilled jobs. § 416.964(b)(2). Regardless of which category is most appropriate, the ALJ's categorization of Plaintiff as a high school graduate is harmless because Plaintiff's academic deficiencies were appropriately considered at Steps Four and Five.

The RFC included the following limitations:

Any work should involve only simple, routine, repetitive tasks and instructions. There should be no more than frequent changes in the work

> environment or routine.  There should be no assembly line, fast-paced, high
> production quota work.   He can sustain nor more than two hours of
> uninterrupted concentration, persistence, and pace without a break.  Reading
> and writing must not be an essential job element, and all instructions must be
> verbal.

(Doc. No. 9-2, ALJ Ruling.)  All jobs selected by the VE as ones Plaintiff could perform, i.e.

linen room attendant, food-service worker, and housekeeper, qualify as unskilled work that

"needs little or no judgment to do simple duties that can be learned on the job in a short

period of time," 20 C.F.R. § 416.968(a).  These jobs have a specific vocational preparation

("SVP") of two, which is work that does not require "anything beyond a short demonstration

up to and including one month of time to learn the techniques, acquire the information, and

develop the facility needed for average performance in the job."  Chambers v. Comm'r of

Soc. Sec., 662 F. App'x 869, 872 (11th Cir. 2016).

      The RFC and unskilled jobs listed by the VE are consistent with Dr. Whitley's

findings Plaintiff is "capable of understanding and following simple, repetitive and unskilled

work tasks" and would have "no difficulty understanding and following 2 and possibly 3 step

simple directions."  R. 22, 346, 368.  For those reasons, the characterization of Plaintiff as a

high school graduate is harmless, and the RFC determination of his intellectual functioning is

based on substantial evidence.

      **C.**     **The ALJ Properly Evaluated the Medical Source Opinions Under the New
Regulations**

      Plaintiff contends the ALJ's decision is not supported by substantial evidence because the

ALJ failed to specify the weight given to the opinions of examining and non-examining

psychologists.  Pl.'s Br., pp. 13-16.  The Court agrees with the Commissioner the ALJ properly

evaluated Plaintiff's medical opinions.

**1.      Assigning Weight to Medical Opinions is No Longer Necessary**

Prior to March 27, 2017, the Commissioner's regulations required the ALJ to give a treating physician's opinion substantial weight.  Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*).  Failure to give a treating physician's opinion substantial weight required the ALJ to show good cause.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987); see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (*per curiam*) ("The ALJ is required to 'state with particularity the weight he gave different medical opinions and the reasons therefor.'").  Additionally, the Commissioner's regulations required that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 416.927(c)(1)-(2), (5).

Pursuant to the revised regulations, applicable to claims filed after March 27, 2017, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a) (2017); 416.920c(a) (2017). Elimination of the treating source rule is intended to "eliminate confusion about a hierarchy of medical sources and instead focus adjudication" on the evidence, as well as discourage courts from reweighing the evidence in violation of the deferential substantial evidence standard of review.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, nature and length of the treatment relationship, specialization, and other miscellaneous factors.  20 C.F.R. §§ 404.1520c(c) (2017) & 416.920c(c)(1)-(c)(5) (2017).  Because supportability and consistency are the most important factors, the ALJ must articulate how these factors were considered for a medical source's opinions, but an ALJ is not required to articulate consideration of the remaining factors.  § 416.920c(b)(2); Uresti v. Comm'r of Soc. Sec., No. 2:20-CV-367-MAP, 2021 WL 2644549, at *4 (M.D. Fla. June 28, 2021).  "Under the new rule, the [ALJ] will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency."  Mackey v. Saul, 2:18-cv-02379-MGL-MGB, 2020 WL 376995, at *4 n.2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (2017)).  In assessing supportability and consistency, the ALJ's analysis focuses on whether the medical source's opinion is supported by the objective medical evidence and supporting explanations and consistent with the other medical and nonmedical sources in the record.  20 C.F.R. §§ 404.1520c(c)(1)-(2) (2017) & 416.920c(c)(1)-(2) (2017).

Furthermore, the ALJ need not articulate how it considered the factors for each medical opinion or prior administrative medical finding from one medical source individually.  Freyhagen v. Comm'r of Soc. Sec. Admin., No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing 20 C.F.R. § 404.1520c(b)(1) (2017)).  "Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [the Commissioner] will articulate how [it] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis."  20 C.F.R. §§ 416.920c(b)(1) (2017) & 404.1520c(b)(1) (2017).  Courts recognize the new regulations erect a framework that is highly deferential to the Commissioner.  See Cook v.

Comm'r of Soc. Sec., No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565832, at *4 (M.D. Fla.

Apr. 6, 2021), *adopted by*, Cook v. Comm'r of Soc. Sec., No. 6:20-CV-1197-RBD-DCI,

2021 WL 1565162 (M.D. Fla. Apr. 21, 2021) (affirming ALJ's rejection of treating source

opinion because inconsistent and unsupported by record); Bunn v. Soc. Security Admin.,

Comm'r, No. 2:20-CV-00218-HNJ, 2021 WL 1171537, at *9 (N.D. Ala. Mar. 29, 2021)

(same).

> ### 2.      Substantial Evidence Supports The ALJ's Assessment of Plaintiff's Medical Source Opinions

Plaintiff argues the ALJ's decision is not supported by substantial evidence because he

did not specify the weight given to the opinions of the examining and non-examining

psychologists.  While the old regulations required ALJs to assign specific weight to medical

opinions, the new regulations do not.  20 C.F.R. § 416.920c.  Plaintiff does not challenge

applicability of the new regulations, and any argument the ALJ improperly evaluated the medical

opinions under the old regulations is meritless.  See Ashley v. Comm'r, Soc. Sec. Admin., 707 F.

App'x 939, 944 n.6 (11th Cir. 2017) ("We apply the regulations in effect at the time of the ALJ's

decision.").

The ALJ conducted a detailed, longitudinal review of Plaintiff's intellectual functioning

as an adult by carefully considering the opinions of three psychological consultants who

conducted a total of four consultative examinations during the period of 2012 to 2019.  The ALJ

fashioned his findings of Plaintiff's intellectual capabilities in full compliance with 20 C.F.R. §

416.920c, by articulating the supportability and consistency factors as follows:

> The DDS consulting psychologists both agreed that there were no more
> than moderate limitations in any of the four areas considered by the "B" criteria
> analysis. Since this is generally consistent with the repeated consultative
> examination findings and the overall record, these opinions are found to be

10

substantially persuasive and are reflected in the above residual functional capacity. The four consultative examiners described above generally support the conclusions reached by DDS and are also determined substantially persuasive. Some of the CE comments suggest greater limitations for the claimant, but their overall assessments, as outlined herein, come down in favor of the B-criteria limitations and vocational relevant RFC restrictions as set forth above (Exhibits 2F, 3F, 6F, and 11F).

(R. 22.)

Plaintiff criticizes the ALJ for not considering the opinions of psychologists who evaluated Plaintiff through his years as a child and teenager in 1998, 2004, and 2009.  However, the case *sub judice* concerns whether Plaintiff was disabled during the adjudicated time period of, at most, May 29, 2015 (day after prior ALJ decision) through July 17, 2019 (date of ALJ decision *sub judice*).  Expert opinions that predate this time period are marginally relevant, at best, and the ALJ's omission of them does not render his decision violative of the regulatory framework or lacking in substantial supporting evidence.

Furthermore, the ALJ properly accounted for Plaintiff's longstanding and well-documented learning disabilities in the RFC, granting Plaintiff "the benefit of longstanding mental issues since childhood." R. 21.  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the reviewing court "to conclude that the ALJ considered the claimant's medical condition as a whole." Adams v. Comm'r of Soc. Sec., 586 F. App'x 531, 533 (11th Cir 2014) (*per curiam*) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).

The Court finds no basis for reversal based on the ALJ's assessment of the medical opinions. Torres v. Comm'r of Soc. Sec., No. 6:19-CV-1662-ORL-PDB, 2020 WL 5810273, at *3 (M.D. Fla. Sept. 30, 2020) (rejecting argument ALJ must assign specific weight to medical opinions based on prior rules because new regulations abrogated treating source rule); see also

11

Dubose v. Soc. Sec. Admin., Comm'r, No. 4:20-CV-00760-ACA, 2021 WL 1208762, at *3 (N.D. Ala. Mar. 31, 2021) (affirming ALJ's finding plaintiff's primary care physician unpersuasive because an ALJ need not defer or give any specific evidentiary weight, including controlling weight, to a treating source).

This Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59.  That a different result is *possible*, does not mean the Commissioner's decision must be reversed.  The ALJ's decision makes clear he adequately considered the record as a whole when determining Plaintiff's RFC.  Thus, the ALJ's assessment of Plaintiff's medical records and determination he is not disabled is supported by substantial evidence.

### D.      The ALJ Correctly Decided Not to Apply Administrative *Res judicata*

Plaintiff contends administrative *res judicata* requires a finding he is disabled because (1) a prior ALJ found he was disabled due to significant subaverage intellectual functioning on February 19, 2015; and (2) the disability application in the case *sub judice* alleges an onset date of February 19, 2015, the date of the prior disability finding.  Citing decisions by the Fourth and Sixth Circuits, Plaintiff argues that, when an ALJ makes a finding of disability in the first proceeding, an ALJ in a subsequent proceeding is bound by the previous finding unless the Commissioner can carry its burden of proving an improvement in the claimant's condition.  See, e.g. Drummond v. Comm'r of Social Security, 126 F.3d 837, 840-43 (6th Cir. 1997) (so holding). The argument ignores Eleventh Circuit precedent that forecloses application of *res judicata*.

Social Security regulations provide for application of *res judicata* when the Commission

12

has "made a previous determination or decision . . . about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action . . . ." 20 C.F.R. § 416.1457(c)(1). Unlike the Fourth and Sixth Circuits, the Eleventh Circuit does not apply *res judicata* under this regulation when the application in the second proceeding concerns any period of time that was not considered in the first proceeding. Griffin v. Astrue, 560 F. App'x 837, 844 (11th Cir. 2014); Moreno v. Astrue, 366 F. App'x 23, 25 (11th Cir. 2010); Lucky v. Astrue, 331 Fed. App'x 634, 638 (11th Cir. 2009).

For example, in Moreno, the periods under review in the first and second proceedings overlapped by three weeks, sharing the dates of November 2, 2001 (date of alleged onset in second application) through November 21, 2001 (date of ALJ denial in first proceeding). Moreno, 366 Fed. App'x at 25-26. Despite this overlap, the Eleventh Circuit found administrative *res judicata* did not apply because the second application "concerned an unadjudicated time period," such that the second proceeding did not involve the "same facts or issues . . . ." Id. at 26-27. Here, the same is true. While there is an overlap in the time periods under consideration because both proceedings share the same onset date of February 9, 2015, the case *sub judice* involves a previously unadjudicated time period of two to four years depending on whether one measures the unadjudicated time period from (1) May 29, 2015 (day after prior ALJ decision) through July 17, 2019 (date of ALJ decision *sub judice*); or (2) May 5, 2017 (date of second application) through July 17, 2019 (date of ALJ decision *sub judice*). Accordingly, the facts and issues are not the same, and administrative *res judicata* does not apply.

IV.     **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 1st day of September, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA